# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Juan J.M.E.,

        Petitioner,

v.

David Easterwood, *Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement*; Markwayne Mullin, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; Todd Lyons, *in his official capacity as acting director of U.S. Immigration and Customs Enforcement*; Todd Blanche, *in his official capacity as Acting Attorney General of the United States*; Eric Tollefson, *Kandiyohi County Sheriff*,

        Respondents.

Case No. 26-cv-2270-KMM-EMB

## REPORT AND RECOMMENDATION

Before the Court is Petitioner Juan J.M.E's[1] petition for a writ of habeas corpus (Dkt. No. 1) under 28 U.S.C. § 2241. The Government filed a response (Dkt. No. 5), and Juan filed a reply (Dkt. No. 8).

---

[1] This District uses the first name and last initials of nongovernmental parties in immigration cases. And Petitioner is referred to by his first name only throughout the remainder of this Report and Recommendation.

The petition was referred to me to issue a Report and Recommendation. I recommend that the petition be granted, and that the Court order the Government to release Juan from custody immediately.

## I.    Background

Juan is a citizen of Guatemala. (Pet. (Dkt. No. 1) ¶ 1.) He entered the United States without inspection in 2013. (*Id.*) Juan is married to a United States citizen, and his child is a United States citizen. (*Id.* ¶ 19.) Juan, his wife, and their son live together in Chicago. (Ex. B (Dkt. No. 6-2) at 3.) Juan has no criminal history and—prior to these events—had never been arrested. (Pet. ¶ 20.)

Immigrations and Customs Enforcement ("ICE") officers arrested Juan on March 5, 2026, after he had left the North Dakota hotel where he stays for work. (*Id.* ¶ 21.) ICE agents "were conducting surveillance" of a vehicle registered to Rafael B., "an individual that had been ordered removed" and who had allegedly been "involved in a hit and run accident." (Ex. B at 2.) Officers observed a vehicle registered to Rafael's brother, Carlos, in the hotel parking lot. (*Id.*) Carlos was subject to a final removal order. (*Id.*)

Around 6:00 am, ICE agents conducted a traffic stop of one of those vehicles as it left the hotel; Juan was one of three people in the car.[2] (*Id.* at

---

[2] It's not clear whether the vehicle in question was the one registered to Rafael or the one registered to Carlos.

2–3.) Juan told an ICE officer "that he was born in Guatemala and [was] a citizen of Guatemala," but he "would not confirm [] whether he was legally or illegally in the United States at the time of arrest." (*Id.* at 3.) Instead, Juan "would only state that he was in the process." (*Id.*)

At the time of the stop, officers did not locate any "legal US immigration documents" in Juan's possession. (Ex. B at 3.) The agents took him "into ICE custody without incident." (*Id.*) ICE officers did not have an arrest warrant for Juan when they stopped the car. (Pet. ¶ 22.) Carlos (the driver of the vehicle) and the other passenger, who admitted he was "present in the United States illegally," were taken into ICE custody at the same time. (Ex. B at 2–3.) Juan was transported to the Grand Forks ICE Enforcement and Removal Operations ("ERO") for processing. (*Id.* at 3.)

Respondents have produced a Form I-200 administrative warrant (Ex. A (Dkt. No. 6-1)) and Notice to Appear (Ex. C (Dkt. No. 6-3)), both dated March 5—the date of the traffic stop. The administrative warrant is directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act . . . to serve warrants of arrest for immigration violations." (Ex. A at 1.) The administrative warrant indicates that Juan's arrest is supported by probable cause, based upon "biometric confirmation of [his identity] and a records check of federal databases," as well as "statements made voluntarily by [Juan] to an immigration officer

3

and/or other reliable evidence that affirmatively indicate [Juan] either lacks immigration status" or is otherwise removable.  (*Id.*)  The administrative warrant was served at the Grand Forks ERO.  (*See id.*)

Juan did not receive a bond hearing after he was detained.[3]  (Pet. ¶ 24.) At some point, he "requested a custody redetermination pursuant to 8 C.F.R. § 1236." (EOIR Order (Dkt. No. 7-1) at 1.)  On April 1, an immigration judge denied that request because Juan "is subject to mandatory detention."  (*Id.*)

Juan remains detained at Kandiyohi County Jail in Willmar, Minnesota.  (Pet. ¶ 9.)

## II.   Legal Standard

The Court may grant a writ of habeas corpus to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see also Rasul v. Bush*, 542 U.S. 466, 473 (2004)).  The right to challenge unlawful detention under § 2241 "extends to those persons challenging the lawfulness of immigration-related detention."  *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)); *see also*

---

[3] Respondents state that Juan had a bond hearing, citing to an administrative arrest warrant and the Miranda Declaration. (Resp. 2–3.) The warrant does not indicate that there was a bond hearing, and the Miranda Declaration only references the denial of the custody redetermination hearing.

4

*Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  "The habeas petitioner bears the burden of demonstrating by a preponderance of the evidence that their detention is unlawful."  *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025).

### III.   Discussion

Juan argues that his detention violates the Immigration and Nationality Act ("INA") and the Fourth and Fifth Amendments of the United States Constitution.[4]

I am persuaded by Juan's argument that his arrest violated the INA. Juan argues that because his arrest was unlawful, his subsequent detention also is unlawful.  *See, e.g.*, *Nielsen v. Preap*, 586 U.S. 392, 397 (2019) (recognizing the distinction between authority to arrest and authority to detain in the context of § 1226(a) and (c)).

Respondents disagree, arguing Juan is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), relying on *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  In that case, a divided Eighth Circuit panel—embracing a

---

[4] As Juan concedes, some of his statutory arguments are foreclosed by the Eighth Circuit's decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Similarly, he concedes the relief he seeks in Count VIII is foreclosed by the pending appeal of *Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).  Because he raises these claims solely for preservation purposes, I do not address their merits.  (*See* Pet. ¶¶ 77–78, 81–82, 86–87, 93–94, 109–10.)

position rejected by myriad district court judges, as well as the Second, Sixth, and Eleventh Circuits—adopted DHS's novel interpretation of the INA and concluded that noncitizens already present in the country are subject to mandatory detention under § 1225(b)(2)(A). *Contrast id., with Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Hernandez Alvarez v. Warden,* No. 25-14075, 2026 WL 1243395 (11th Cir. May 6, 2026); *and Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891 (6th Cir. May 11, 2026).

Following *Avila*, Respondents claim Juan is detained pursuant to 8 U.S.C. § 1225(b)(2)(A), (*see* Resp. (Dkt. No. 5) at 3), and Juan agrees, (*see* Reply (Dkt. No. 8) at 4). Nevertheless, Juan claims his initial arrest was unlawful because § 1225(b)(2)(A) confers no authority to *arrest* noncitizens even if it authorizes their mandatory *detention*. *Avila* held that because noncitizens in the interior of the country are "seeking admission" under the language of § 1225(b)(2)(A), they are subject to mandatory detention under that subsection. But the Eighth Circuit did not address the basis to initially *arrest* any noncitizen falling under that provision, nor can *Avila* be read to say that § 1225(b)(2)(A) authorizes arrests. Although not squarely addressed, *Avila* appears to acknowledge a difference between the authority to arrest and detain. *Avila*, 170 F.4th at 1133 n.3 (distinguishing a case as related to "making warrantless arrests of aliens" and stating that "is not the issue

6

here," but noting that court also discussed "the Government's power to detain aliens under § 1225(b)(2)(A)").

Because § 1225(b)(2)(A) does not address arrest, the parties discuss two possible INA provisions that do permit arrest of a noncitizen such as Juan: Sections 1226(a) and 1357(a)(2).  But neither provision justifies the arrest here.

First, § 1226(a) cannot be the basis for Juan's arrest.  That section provides for arrest on a warrant. 8 U.S.C. § 1226(a).  Respondents haven't shown that the arrest warrant here preceded Juan's arrest.  Instead, the warrant apparently issued shortly *after* officers detained Juan, as it was served at the Grand Forks ERO.  Thus, § 1226(a) is not the basis for his arrest, and Respondents do not argue otherwise.

Next, § 1357(a)(2) empowers immigration officers to arrest noncitizens without a warrant when the officer "has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a)(2) (emphasis added).  Assuming officers had probable cause to believe Juan was unlawfully present in the United States, Respondents have proffered nothing to suggest he was likely to escape before they could get an arrest warrant.  *Id.*  To permit a warrantless arrest without some indicia of flight risk would eliminate one of § 1357(a)(2)'s statutory requirements.

Thus, § 1357(a)(2) is not the basis for his arrest, and Respondents do not argue otherwise.

Having implicitly conceded that neither § 1226(a) nor § 1357 justified Juan's arrest, Respondents next suggest that § 1225(b) provides inherent arrest authority. (*See* Resp. at 4 ("[U]nder Section 1225(b)(2)(A), if an immigration official following inspection determines the person is not clearly entitled to stay in the country, arrest and detention is mandatory.").) Respondents claim that officers exercised that arrest authority here because the "Record of Deportable/Inadmissible and Notice to Appear make it clear that, *following inspection*, immigration officials knew Petitioner was an illegal alien not entitled to be admitted in accordance with Section 1225(b)(2)(A)." (*Id.* (emphasis added).) It is not clear what Respondents mean by "inspection" in this context. Based on the briefing, it appears officers only confirmed Juan's immigration status (and therefore "knew he was an illegal alien") *after* arresting him at the traffic stop and transporting him to the Grand Forks ERO. I find it unpersuasive that an "inspection" occurring after a warrantless arrest can retroactively justify that arrest if it turns out the arrestee lacks legal status. Respondents point to no authority supporting that interpretation of the statute. Indeed, if Congress wanted to make clear that 1225(b) provided a separate basis to arrest a noncitizen, "it could have easily done so." *Avila*, 170 F.4th at 1134.

8

Setting aside statutory authority, Respondents finally rely on policy, arguing that "allow[ing] someone subject to mandatory detention to go free would 'require the courts to close their eyes to ongoing violations of the law.'" (Resp. at 4 (quoting *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1046 (1984)).) But agents were not faced with a binary choice to either arrest Juan during the traffic stop or simply let him "go free." With Juan now on their radar, agents could have released him, confirmed his immigration status, and then obtained a warrant before re-arresting him at his now-known home or work addresses.

In sum, Respondents arrested Juan before obtaining the Form I-200 administrative warrant, so Juan was not legally arrested under § 1226(a). Respondents have failed to show that the warrantless arrest was justified under § 1357(a)(2). And even if Juan is detained under § 1225(b)(2), that provision of the INA does not provide for arrest. Accordingly, Juan's initial arrest was unlawful under the INA. Unlawful arrest is remedied by release. *See Espinoza-Avalos v. Blanche,* 8:26-cv-191, 2026 WL 1396593, at *4 (D. Neb. May 19, 2026) ("Having concluded that Petitioner's arrest was unlawful ab initio, the proper remedy is his immediate release." (citing *Hector J.A.S. v. Shea*, 26-cv-2242 (JRT/DLM), 2026 WL 1243500, at *3 (D. Minn. May 6, 2026))). I therefore recommend that the habeas petition be granted and that Juan be immediately released.

Because I find that Juan is entitled to immediate release due to INA violations at the time of his arrest, I do not reach his other arguments.

Finally, I draw the parties' attention to the atypically short deadlines to file objections to this Report and Recommendation.

## IV.   Recommendation

For the foregoing reasons, and upon careful consideration of the entire record, IT IS HEREBY RECOMMENDED that:

1.  Juan's petition for a writ of habeas corpus (Dkt. No. 1) be GRANTED;

2.  The Government be ORDERED immediately release Juan in Minnesota, at a safe time and place communicated in advance to counsel, and with all of his possessions; and

3.  The Government be ORDERED promptly to file an update on the docket showing that such release has taken place.

Date: June 8, 2026

s/ Elsa M. Bullard
Elsa M. Bullard
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy

of the recommended disposition, *unless the court sets a different deadline.*" (Emphasis added.) The Court modifies the deadline such that objections are due on or before **June 15, 2026**. Responses to objections are due on or before **June 19, 2026**. All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).